**Marc R. GORDON, on behalf of himself and all others similarly situated**

v.

**DIAGNOSTEK, INC., Medco Containment Services, Inc., Nunzio P. DeSantis, Arthur C. Solomon, Julius Golden, and Miles M. Stuchin.**

**Civ. A. No. 92–6509.**

United States District Court, E.D. Pennsylvania.

Jan. 21, 1993.

Richard D. Greenfield, Haverford, PA, for plaintiff.

Jay A. Dubow, Philadelphia, PA, for Diagnostek, et al.

Henry Kolowrat, Philadelphia, PA, for Medco, Inc.

## MEMORANDUM AND ORDER

DITTER, District Judge.

This is a shareholder class action suit against Diagnostek, Inc., certain of its directors and officers, ("the Diagnostek defendants") and Medco Containment Services, Inc., a company which had intended to acquire Diagnostek. Before me is the Diagnostek defendants' motion to transfer the case to New Mexico, which the plaintiffs do not oppose, and Medco's motion to dismiss plaintiffs' amended complaint. For the following reasons, I will grant the transfer motion after having granted Medco's motion to dismiss.

### I. Deciding Medco's Motion to Dismiss before Ruling on the Transfer Motion

The Diagnostek defendants contend that I cannot decide Medco's motion to dismiss until after I have ruled on their motion to transfer. They rely chiefly on *McDonnell Douglas Corp. v. Polin*, 429 F.2d 30 (3d Cir.1970). In *McDonnell Doug-*

las, the Third Circuit reversed a district court for delaying its decision on a transfer motion until after completion of discovery on the merits of the suit. Subsequently, *McDonnell Douglas* has been held to mean district courts must decide all transfer motions before proceeding "on the merits." *In re All Terrain Vehicles Litig.*, 1989 WL 30948 at *2, 1989 U.S.Dist. LEXIS 1843 at *5 (E.D.Pa.1989); *Impervious Paint Industries, Ltd. v. Ashland Oil*, 444 F.Supp. 465, 466, n. 2 (E.D.Pa.1978).

Those cases do not prevent my granting Medco's motion to dismiss, however. Concerned with fairness to the transferee court and judicial economy in general, *McDonnell Douglas* sought to bar district courts from making case-management decisions which would later bind the transferee court if indeed the case were transferred.[1] Cases following *McDonnell Douglas* have involved comparable issues, *see, e.g., All Terrain Vehicles, supra*, (class certification decision deferred to transferee court); *Matra Et Manurhin v. Intern. Armament Co.*, 628 F.Supp. 1532 (S.D.N.Y.1986) (arbitrability question deferred to transferee court). By contrast, however, my deciding Medco's motion to dismiss will not interfere with the case transferred to the District Court for the District of New Mexico. In fact, it will cleanly excise one defendant and permit the rest of the case to be transferred with all parties' consent to New Mexico. Such a resolution serves the goals of fairness and judicial economy which *McDonnell Douglas* emphasized.

## II. *Medco's Motion to Dismiss*

For purposes of the motion to dismiss, therefore, I accept the following allegations as true. On September 1, 1992, Medco and Diagnostek announced Medco would acquire Diagnostek in a stock swap valued at over $400 million. Diagnostek's shares were valued at more than $17 per share, based on the price of Medco's stock. The proposed agreement would have allowed Medco to adjust the swap ratio to ensure that Diagnostek's shareholders got stock with a value of at least $15 per share.

On November 9, 1992, before the agreement went into effect, Diagnostek disclosed that it had made certain "accounting errors" which had caused it to inflate the report of its first quarter fiscal year 1993 earnings. That inflated report is the basis of the underlying securities fraud suit against Diagnostek. Plaintiffs also sued Medco, however, because on the day Diagnostek made its announcement, Medco issued a press release declaring it was reconsidering its proposed stock swap. On November 11, 1992, Medco stated the acquisition was off. Citing these announcements and Medco's underlying relationship with Diagnostek, plaintiffs have charged Medco both with independent violations of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j, and secondary liability for Diagnostek's fraud.

I find plaintiffs fail to state a claim under either theory.

## III. *Primary Liability*

Plaintiffs charge Medco with failing to disclose material, adverse information it knew about Diagnostek between September 1, 1992, and November 9, 1992. Amended Complaint ¶¶ 13, 15, 29, 32, 36. Plaintiffs also claim Medco "actively concealed" this information. *Id.* ¶ 23. Furthermore, plaintiffs charge Medco with affirmatively misrepresenting Diagnostek's situation by announcing its plans to acquire Diagnostek without stating that this acquisition was "conditioned" on the accuracy of Diagnostek's reported earnings. *Id.* ¶ 31.

I will address the non-disclosure and concealment charges first. Silence is only actionable if a defendant had a duty to speak. *Chiarella v. United States*, 445 U.S. 222, 229–30, 100 S.Ct. 1108, 1115, 63 L.Ed.2d 348 (1980); *Flynn v. Bass Bros. Enterprises, Inc.*, 744 F.2d 978, 984 (3d

---

1. The court wrote: "Judicial economy requires that another district court should not burden itself with the merits of the action until it is decided that a transfer should [not] be effected and such consideration additionally requires that the court which ultimately decides the merits of the action should also decide the various questions which arise during the pendency of the suit instead of considering it in two courts." 429 F.2d at 30.

Cir.1984). Liability under section 10(b) is "premised upon a duty to disclose arising from a relationship of trust and confidence between parties to a transaction." *Chiarella*, 445 U.S. at 230, 100 S.Ct. at 1115. The "mere possession of nonpublic market information" does not give rise to a duty to disclose, *id.*, 445 U.S. at 235, 100 S.Ct. at 1118; the duty only arises from a fiduciary or other relationship of trust stemming from prior dealings between the parties. *See id.*, 445 U.S. at 232–34, 100 S.Ct. at 1117. In this case, Medco had no relationship with, and therefore no duty to, the shareholders of Diagnostek. Even assuming Medco knew Diagnostek had inflated its earnings (which is unlikely, given Medco's own willingness to buy Diagnostek at a high price), Medco had no duty to disclose that information. *Chiarella* makes clear that the duty to disclose material information is not owed "to everyone; to all sellers, indeed, to the market as a whole." 445 U.S. at 231, 100 S.Ct. at 1116. The duty arises only from a specific relationship between two parties which either explicitly or implicitly requires such disclosure. *See id.*, 445 U.S. at 232–34, 100 S.Ct. at 1117. Medco owed no special fiduciary responsibility to the shareholders of a separate corporation whose stock it was planning to acquire as part of an arms-length transaction. *See Staffin v. Greenberg*, 672 F.2d 1196, 1203 (3d Cir.1982).

A further observation reinforces this point. The duty to disclose has been called an "alternative" duty, rather than an absolute one, since one bound by it may always choose either to disclose or to abstain from trading. *See id.* (citing cases). Here, it is not alleged Medco profited in any way from concealing Diagnostek's true condition.[2] All Medco "gained" from dealing with Diagnostek was an acquisition agreement it later had to abandon, and (probably

prolonged) litigation against that company for breach of contract.[3]

Plaintiffs further suggest Medco made affirmative misrepresentations in the public statements it did issue. Such misrepresentations are clearly forbidden. *See* Rule 10b–5(2); *Staffin*, 672 F.2d at 1204. Paragraph 31 of the amended complaint states:

> The Company and Medco disseminated press releases, shareholder reports, SEC filings, or other documents to the investing public that either misrepresented the financial and/or operating condition of Diagnostek and/or failed to disclose other facts material thereto, including that the Company had misrepresented its first quarter fiscal 1993 results and that the merger between Diagnostek [sic] and the Company would occur only under the condition that Diagnostek's reported financial and/or operating conditions were accurate.

The only public statements plaintiffs allege Medco issued, however, are the September 1, 1992, announcement that Medco would acquire Diagnostek and the November 7, 1992, and November 9, 1992, press releases, stating it was reconsidering and then cancelling the Diagnostek deal. None of these is alleged to be misleading.

■ With regard to the alleged misrepresentation of a "condition" of the deal—that Medco would only go forward if Diagnostek's reported earnings were accurate— plaintiffs again fail to state a claim. Plaintiffs evidently infer there was such a "condition" from the fact that Medco terminated its acquisition plan after Diagnostek revealed its earnings reporting errors. To be actionable under section 10(b), an omission must render a public assertion "so incomplete as to mislead . . ., i.e., . . . [to convey] to the public a false impression." *Staffin*,

---

**2.** At most, plaintiffs allege Medco "was motivated to conceal adverse financial information in its possession concerning Diagnostek to avoid admitting that it had agreed to purchase Diagnostek for too high of a price and/or to utilize such information to coerce [Diagnostek] into negotiating revised terms for the merger." Complaint ¶ 13. Neither of these alleged motivations created material gain for Medco. Nor

did they constitute scienter, which plaintiffs must also plead. *See Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193, n. 12, 96 S.Ct. 1375, 1381, n. 12, 47 L.Ed.2d 668.

**3.** Medco is evidently involved now in breach of contract litigation in Delaware state court.

672 F.2d at 1204, quoting *Exchange Commission v. Texas Gulf Sulphur Co.*, 401 F.2d 833 (2d Cir.1968), *cert. denied sub nom. Coates v. SEC*, 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969). Omitting a "condition" which must have been obvious to any reasonable investor hardly "convey[s] to the public a false impression." No fact-finder could conclude that an investor relied on the "representation" that Medco was going to buy Diagnostek *even* if it turned out all the underlying valuations of that company were untrue. Consequently, I find plaintiffs fail to state a claim for Medco's direct liability under section 10(b).

IV. *Secondary Liability*

A. Controlling Person

Plaintiffs loosely allege that the period between September 1, 1992, and November 9, 1992, was a "period of control" for Medco for which it can be held liable for Diagnostek's fraud under section 20(a) of the Securities and Exchange Act.[4] Amended Complaint ¶¶ 15, 32.

■ Controlling person liability exists where the defendant has direct or indirect power over the management or policies of a company and "in some meaningful sense culpably participate[s] in them." *Rochez Bros., Inc. v. Rhoades*, 527 F.2d 880, 890 (3d Cir.1975); *Wiley v. Hughes Capital Corp.*, 746 F.Supp. 1264, 1281 (D.N.J.1990). Plaintiffs fail to allege either that Medco held such power over Diagnostek or that it "culpably participated" in Diagnostek's actions. The amended complaint merely alleges in conclusory fashion that Medco enjoyed this "period of control" and therefore knew about and encouraged Diagnostek's wrongdoing. Plaintiffs allege no basis for these conclusions, however, beyond Medco's status as an intended acquirer.

■ There is some dispute over whether the mere recitation of a defendant's status as an *officer* or *director* of a corporation will state a claim for controlling person liability. *See Wiley*, 746 F.Supp. at 1281; *In re Phillips Petroleum Securities Litigation*, 738 F.Supp. 825, 841 (D.Del.1990) (status is ordinarily not sufficient to warrant finding of power to control); *Savino v. E.F. Hutton & Co.*, 507 F.Supp. 1225, 1243 (S.D.N.Y.1981) ("proof of 'control by status,' as distinct from 'actual control,' is all that is required to make out a prima facie case under Section 20(a)"). Apparently, courts should give considerable weight to the potential authority inherent in corporate positions, even if plaintiffs fail to describe those defendants' control or participation precisely. *See In re Meridian Securities Litigation*, 772 F.Supp. 223, 228 (E.D.Pa.1991); *In re Midlantic Corp. Shareholder Litig.*, 758 F.Supp. 226, 230 (D.N.J.1990). In this complaint, however, plaintiffs do not describe a status that resembles that of an officer or director but describe only a potential, arms-length *acquirer*, and by doing so hope they have stated a claim for liability under section 20(a). Unlike in the role of officer or director, there is nothing inherent in the position of acquirer which logically implies privileged knowledge about or control of another corporation. Indeed, as Medco contends, it is more likely that a company about to be bought would keep adverse information from its purchaser rather than disturb the proposed sale. Plaintiffs allege no facts in support of their claim that Medco could or did control Diagnostek, other than to say Medco intended to acquire it. Moreover, the complaint alleges nothing about Medco's "culpable participation" in Diagnostek's decisions except, again, to say Medco intended to acquire it. Since I cannot imagine, much less supply, the allegations that plaintiffs need but have not

---

**4.** Section 20(a) provides: "Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action." 15 U.S.C. § 78t.

made, I will dismiss the controlling person liability claims against Medco.

### B. Aiding and Abetting

 Finally, plaintiffs fail to allege sufficiently that Medco aided and abetted Diagnostek's alleged fraud. Aiding and abetting a securities violation requires three elements: 1) securities law violations by a primary actor, 2) knowledge of the fraudulent conduct on the part of the person charged with aiding and abetting, and 3) substantial participation in the perpetration of the fraud charged. *See Walck v. American Stock Exch., Inc.,* 687 F.2d 778, 791 (3d Cir.1982), *cert. denied,* 461 U.S. 942, 103 S.Ct. 2118, 77 L.Ed.2d 1300 (1983) (citing *Landy v. FDIC,* 486 F.2d 139, 162 (3d Cir.1973), *cert. denied,* 416 U.S. 960, 94 S.Ct. 1979, 40 L.Ed.2d 312 (1974)); *see also Meridian,* 772 F.Supp. at 228. Particularly where the defendant has no duty to act or disclose, as is the case with Medco, the "scienter requirement scales upward," *Kahn v. Chase Manhattan Bank, N.A.,* 760 F.Supp. 369, 374 (S.D.N.Y.1991), quoting *Armstrong v. McAlpin,* 699 F.2d 79, 91 (2d Cir.1983), and plaintiffs must allege knowing and substantial assistance on the part of the defendant.

Plaintiffs allege the first and second elements: primary wrongdoing by Diagnostek and Medco's knowledge of it. They fail again, however, to allege Medco's substantial assistance or participation in Diagnostek's acts.

 Substantial participation in fraud must be pleaded with particularity pursuant to Federal Rule of Civil Procedure 9(b).[5] I recognize that this rule has been interpreted leniently in the context of securities fraud, *see Seville Indus. Machinery*

*Corp. v. Southmost Machinery Corp.,* 742 F.2d 786 (3d Cir.1984), *cert. denied,* 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985), but it still requires allegations of fraud to reflect "precision and some measure of substantiation." *Meridian,* 772 F.Supp. at 229. Plaintiffs' allegations against Medco reflect neither. All plaintiffs do is impute Diagnostek's knowledge of its actual earnings and its failure to correct those earnings reports to Medco. They describe no actual guidance of or even acquiescence in[6] Diagnostek's fraud by Medco. Plaintiffs merely charge Medco with knowledge of Diagnostek's fraud and a prior plan to acquire Diagnostek. Mere recitation of a defendant's status as an intended acquirer fails to state a claim for aiding and abetting.

### V. Conclusion

Plaintiffs fail to state a claim for Medco's primary liability under section 10(b). Medco had no independent duty to disclose information to Diagnostek's shareholders, and plaintiffs do not point to any actual misrepresentations by Medco in the information it chose to reveal.

Further, plaintiffs fail to state a claim for Medco's secondary liability for Diagnostek's behavior. The amended complaint fails to describe either Medco's control over Diagnostek or its culpable participation in Diagnostek's fraud. Both are required for controlling person liability under section 20(a), and the second, pleaded with particularity, is required to allege aiding and abetting.

I will therefore grant Medco's motion to be dismissed from this suit. I will further grant the Diagnostek defendants' unopposed motion to transfer the case to the

---

5. Rule 9(b) provides: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally."

6. Inaction can serve as a predicate for aiding and abetting liability where the aider-abetter *consciously* intended to assist in the perpetration of a wrongful act. *See Monsen v. Consol. Dressed Beef Co., Inc.,* 579 F.2d 793, 800 (3d Cir.1978); *Gould v. American–Hawaiian Steamship Co.,* 535 F.2d 761, 780 (3d Cir.1976). Plain-

District Court for the District of New Mexico.[7]

tiffs make no such specific allegation in this complaint, however.

7. The plaintiffs and the Diagnostek defendants submitted for my approval two stipulations, one which extends the time for the Diagnostek defendants to answer or otherwise respond to the amended complaint, and one which extends the time for them to respond to plaintiffs' first request for production of documents. Since these are both case-management issues, approval of these stipulations now properly belongs in the New Mexico district court. I will not approve them but will forward them with the rest of the case file to New Mexico.