Paul LERNER, on behalf of himself and all others similarly situated, Plaintiff,

v.

FNB ROCHESTER CORP., First National Bank of Rochester, Wilbur F. Beh, Richard A. Calabrese, John Piraino, Jr., Richard J. Elliott, Herbert N. Stern, Leonard Relin, Francis Guenther, Yapi Ve Kredi Bankasi A.S., the Cukurova Group, and Elliott, Stern & Calabrese, Defendants.

No. 93–CV–6114T.

United States District Court, W.D. New York.

Sept. 28, 1993.

Richard D. Greenfield, Richard D. Greenfield & Partners, New York City, Fredric I. Lazarus, Richard D. Greenfield & Partners, Haverford, PA, Mark C. Rifkin, Greenfield & Rifkin, Haverford, PA, for Lerner.

Kenneth A. Payment, Harter, Secrest & Emery, Rochester, NY, for FNB Rochester Corp., and First Nat. Bank of Rochester.

Russell I. Zuckerman, Underberg & Kessler, Rochester, NY, for Wilbur F. Beh.

Michael W. Malarney, Elliott, Stern & Calabrese, Rochester, NY, for Piraino, Elliott, Stern, Relin, Tremont and Guenther.

John S. Willems, White & Case, New York City, for the Cukurova Group.

Richard A. Calabrese, Elliott, Stern, Calabrese & Higgins, Rochester, NY, for Elliott, Stern & Calabrese.

Richard J. Holwell, John S. Willems, White & Case, New York City, for Yapi Ve Kredi Bankasi, A.S.

## DECISION AND ORDER

TELESCA, Chief Judge.

## INTRODUCTION

This is a shareholder class action brought against the First National Bank of Rochester, its corporate parent, FNB Rochester Corp. ("FNBR"), certain of its former directors and/or officers, its former law firm (all collectively referred to as "the FNBR defendants") and Yapi Ve Kredi Bankasi A.S. ("Yapi")[1], a Turkish banking company which had intended to acquire FNBR. Now before me is the motion of the FNBR defendants and the separate motion of Yapi to dismiss this securities fraud case pursuant to Fed.

---

**1.** Defendant Cukorova Group is a conglomeration of Turkish individuals and companies which owns a majority of Yapi's shares.

R.Civ.P. 12(b)(6) for failure to state a claim upon which relief may be granted, and pursuant to Fed.R.Civ.P. 9 for failure to plead fraud with particularity. For the reasons set forth below, the motions of the FNBR defendants to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) and 9 are granted, the motion of Yapi to dismiss pursuant to Rule 12(b)(6) is granted, and the Amended Complaint is dismissed with prejudice.

## BACKGROUND

FNBR is a bank holding company with three subsidiaries, the largest of which is the First National Bank of Rochester, a full-service commercial bank. FNBR's primary service and marketing area is the City of Rochester, New York and surrounding towns.

As a result of an increase in FNBR's loan portfolio, which more than tripled in size between 1984 and 1990, FNBR's net income rose substantially, increasing from $907,000 in 1984 to $2,640,000 in 1989. In 1990, however, FNBR's net income fell to $1,522,000 [2]. FNBR suffered a net loss of ($1,938,000) in 1991, primarily due to a large increase in its provision for loan losses, a major income statement expense, which increased from $2,687,000 in 1990 to $5,130,000 in 1991.

On June 28, 1991, defendant Yapi agreed to acquire all of FNBR's outstanding common stock for $14.50 per share and other consideration. However, before the merger was consummated, Yapi informed FNBR on March 30, 1992 of its intention to terminate the merger agreement due to a material adverse change in the financial condition of FNBR. On April 24, 1992, FNBR announced this development, as well as the retirement of defendant Beh and the resignations of defendants Calabrese, Elliott, Relin and Stern.

On June 8, 1992, FNBR announced that it had entered into a consent order with the Federal Reserve Bank of New York and into a separate consent order with the OCC as a result of investigations into FNBR's lending practices and the condition of its loan portfo-

lio. These orders required certain actions be taken as a result of FNBR's deteriorated financial condition.

Paul Lerner ("plaintiff") purchased FNBR common stock and 10% subordinated notes on various occasions during the relevant period, October 10, 1989, to November 12, 1992. He initiated this action on behalf of himself and all others similarly situated who purchased FNBR publically-traded securities and who were allegedly damaged as a result. However, a class has yet to be certified.

## THE CLAIMS

Specifically, plaintiff's claims are grouped into four separate Counts. Count I alleges that FNBR misrepresented and failed to disclose material information in violation of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j, and Securities and Exchange Commission Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5. Count I also alleges that the individual defendants are liable as "controlling persons" under § 20(a) of the Exchange Act, 15 U.S.C. § 78t, for FNBR's alleged § 10(b) violations. Plaintiff has also charged Yapi with a violation of § 10(b) and Regulation 10b–5 for its failure to disclose what it learned prior to the termination of its merger agreement with FNBR, and with secondary liability for FNBR's fraud.

Count II avers that the Registration Statement (and amendments thereto), pursuant to which the 10% Subordinated Notes were issued, were false and misleading because of misrepresentations and omissions of material facts concerning FNBR's true financial condition, in violation of Sections 11 and 12 of the Securities Act of 1933, 15 U.S.C. Sections 77k(a), 77l. In addition, he alleges that the director defendants, who were all senior officers and/or directors of FNBR, are liable as controlling persons of FNBR under § 15 of the 1933 Act, 15 U.S.C. § 77o. Finally, plaintiff alleges that defendants negligently (Count III) and fraudulently (Count IV) misrepresented and omitted material informa-

---

**2.** As restated in December, 1991 following an examination by the Office of the Comptroller of the Currency ("OCC").

tion in violation of their common law duty of care.

## DISCUSSION

### I. Dismissal Under Fed.R.Civ.P. 12(b)(6)– The FNBR Defendants

#### A. Legal Standard

Rule 12(b)(6) provides that a party may move to dismiss an action for "failure to state a claim upon which relief may be granted." A court may properly grant a motion to dismiss a complaint only when, construing all well-pleaded factual allegations in the complaint in favor of the plaintiff, it determines that ."the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," *Conley v. Gibson,* 355 U.S. 41, 45– 46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). It is well established "that a securities fraud claim under section 10(b) falls within the umbra [of both Fed.R.Civ.P. 12(b)(6) and] Fed.R.Civ.P. 9(b); *see Luce v. Edelstein,* 802 F.2d 49, 55 (2d Cir.1986)," *S.E.C. v. Willis,* 777 F.Supp. 1165, 1172 (S.D.N.Y.1991).

#### B. § 10(b)

■ Under the authority provided by § 10(b) of the Exchange Act of 1934, the Securities and Exchange Commission promulgated Rule 10b–5, which makes it unlawful to misrepresent or omit material information in connection with the purchase or sale of securities. 17 C.F.R. § 240.10b–5. To state a claim under § 10(b) and Rule 10b–5, a private plaintiff must plead (1) a material misstatement or omission; (2) indicating an intent to deceive or defraud (scienter); (3) in connection with the purchase or sale of any security; (4) through the use of interstate commerce or a national securities exchange; (5) upon which the plaintiff detrimentally relied; and (6) where the fraud in fact caused the injuries. *CL–Alexanders Laing & Cruickshank v. Goldfeld,* 739 F.Supp. 158, 163 (S.D.N.Y.1990).

■ Plaintiff alleges that following deregulation of the banking industry in 1980, FNBR "embarked on an aggressive and unprecedented effort to expand its commercial banking franchise and diversify into finance-

related fields including mortgage origination." Complaint, ¶ 22. "The acquisition and diversification strategy was at the direction of defendants Beh and Calabrese and those of their colleagues then on the Board. Such growth, however, outstripped FNB's management capabilities," Complaint, at ¶ 23. In order to achieve rapid growth, FNBR "abandoned its historically conservative management approach and many of the principles of prudent lending" by "aggressively courting the business of highly leveraged real estate promoters and developers." Complaint, at ¶ 24. Plaintiff charges that the individual defendants, in their roles as FNBR officials, misrepresented and concealed the quality of FNBR's loan portfolio, and misrepresented and concealed the likelihood of significant increases in non-performing assets, chargeoffs, and loan loss reserves in order to "protect and perpetuate their executive positions and the substantial compensation and prestige they obtained thereby." Complaint, at ¶ 15. In addition, the FNBR defendants are alleged to have falsely stated that the loans to directors and officers were on the same terms as those with unrelated parties, and that the defendants provided untimely and inadequate notice concerning FNBR's dealings with regulatory authorities.

Clearly, a reasonable investor would be influenced significantly by knowledge that a bank has knowingly or recklessly hidden its true financial status by deliberately misstating its level of non-performing loans, failing to provide adequate reserves, and indulging its problem loan customers. However, what is missing from this Complaint are *facts* which indicate that such misstatements or omissions occurred, or that the FNBR defendants deliberately engaged in making misstatements or omissions.

Read as a whole, plaintiff's allegations charge the defendants with failing to predict and report the future, thus making this Complaint strikingly similar to others filed in the wake of the economic downturn of the early 1990's. *See Shields v. Amoskeag Bank Shares, Inc.,* 766 F.Supp. 32, 38 (D.N.H. 1991), and cases cited therein; *see also Dubowski v. Dominion Bankshares Corp.,* 763 F.Supp. 169, 173 (W.D.Va.1991). This Court

concludes, as have most others faced with "standardized" complaints following a financial institution's poor economic performance, that plaintiff's allegations "amount to corporate mismanagement and poor business judgment in coping with the general economic downturn, rather than fraud." *Shields v. Amoskeag Bank Shares,* 766 F.Supp. at 38. It is well established that § 10(b) was not designed to regulate corporate mismanagement nor to prohibit conduct which does not involve manipulation or deception. *Santa Fe Industries, Inc. v. Green,* 430 U.S. 462, 473, 97 S.Ct. 1292, 1300, 51 L.Ed.2d 480 (1977).

The Complaint here is, in most respects, so general that it could have been filed against any financial institution which experienced the economic problems suffered by FNBR during the same time period. As an example, plaintiff specifically points to the 1989 Annual Report, wherein management characterized its asset quality as "superior as compared to our national peer group" (Complaint, ¶ 41) and "the highest level of asset quality as compared to our national peer group" (Complaint, ¶ 42). While the qualitative characterizations of management can indeed be the basis for liability under Rule 10b–5, *see Virginia Bankshares, Inc. v. Sandberg,* —— U.S. ——, 111 S.Ct. 2749, 115 L.Ed.2d 929 (1991), the Complaint proffers no facts from which to infer that asset quality was not superior in 1989, before the economy turned sour, or that management did not actually believe it to be the case.

Instead, plaintiff points to FNBR's loans to "highly leveraged real estate promoters and developers" as evidence that the defendants knew or should have known that a substantial portion of FNBR's real estate loans were fundamentally unsound. It is a reality that the real estate sector of the economy was particularly hard hit by the recession, and that many other financial institutions experienced significant losses because their portfolios were heavily concentrated in real estate loans. Far from alleging fraudulent misstatements or omissions, however, plaintiff is more accurately expressing his displeasure with the judgment calls made by management, which turned out to have been poorly made, and with management's failure to anticipate that its portfolio would be particularly vulnerable in an economic slump.

Nor does the fact that insider loans were made, or that regulatory authorities were critical of management for allowing such loans to be made, automatically implicate the concerns of the federal securities laws. Plaintiff has not alluded to a single specific loan that was so substandard as to give rise to the inference that defendants were driven by fraudulent intent rather than poor judgment or mismanagement. For the same reason, plaintiff's allegations of material misstatements or omissions regarding pending regulatory action or the pending merger with Yapi must also fail. "There must still be more than vague allegations that, as shown by subsequent developments, the corporation's true financial picture was not so bright in some respects [as represented] and that the defendants knew, or were reckless in failing to know, this." *Denny v. Barber,* 576 F.2d 465, 470 (2d Cir.1978). There is no "fraud by hindsight," *Denny,* 576 F.2d at 470, and where hindsight is all that the plaintiff offers, the complaint fails to state a claim under federal securities law.

**C. Sections 11 and 12 of the 1933 Act**

 Count II charges that the Registration Statement accompanying FNBR's 10% Subordinated Notes was false and misleading, and that plaintiff purchased the notes pursuant to the Registration Statement. Under § 11 of the 1933 Act, any person acquiring a security issued pursuant to a false or misleading registration statement may recover damages. *See* 15 U.S.C. § 77k. § 12(2) provides that a person who "offers or sells" securities by means of a prospectus or oral communication that misrepresents or omits material facts is liable to the person "purchasing such security from him." 15 U.S.C. § 77*l*. Thus, while scienter is not required to establish a violation of sections 11 or 12 of the 1933 Act, plaintiff is nonetheless required to establish that the challenged registration statement contained misstatements or omissions of material fact. *Craftmatic Securities Litigation v. Kraftsow,* 890 F.2d 628, 634 (3rd Cir.1989).

This Count must also be dismissed because of an absence of facts indicating that the Registration Statement contained misstatements or omissions. Plaintiff only charges generally that the Registration Statement "falsely portrayed the Company as [a] strong and stable institution," Complaint, at ¶ 76.

As examples of such misstatements, plaintiff points to the "Recent Developments" section of the Registration Statement, wherein FNBR discussed the recent additions to its branch banking network, including the purchase of a banking office from Citibank, N.A. in Honeoye Falls, New York. FNBR described its Fair Haven, New York and Honeoye Falls additions, respectively, as providing the bank with "sound, stable deposit in an established community between its Rochester and Syracuse locations," and as "further establish[ing] First National's presence in the southern quadrant of the county." While these descriptions appear to be facially innocuous, plaintiff interprets them as "false and misleading because the Company knew or was reckless in not knowing that this growth was not indicative of a strong, stable institution but was instead created by an abandonment of conservative policies, and had outstripped the Company's capability to prudently manage its financial condition." *Id.* Plaintiff also charges that FNBR "knew or was reckless in not knowing that its growth in profitability was illusory and short-term at best due to the extremely high-risk nature of the Bank's loan portfolios...." Complaint, at ¶ 77. Other than the subsequent poor performance which FNBR posted in 1991, however, plaintiff offers no facts to support these conclusory assertions, which, again, are complaints of mismanagement rather than misrepresentations. Accordingly, plaintiff's 1933 Act claims are dismissed.

## II. Rule 9–The FNBR Defendants

The FNBR defendants also move to dismiss this action for failure to plead fraud with particularity. Rule 9(b) provides that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally."

■ This Court is mindful of Justice Rehnquist's observation that a securities law "complaint which by objective standards may have very little chance of success at trial has a settlement value to the plaintiff out of any proportion to its prospect of success at trial so long as he may prevent the suit from being resolved against him by dismissal or summary judgment." *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 740, 95 S.Ct. 1917, 1927, 44 L.Ed.2d 539 (1975). Consequently, this Court applies Rule 9 strictly to prevent a plaintiff with a largely groundless suit from conducting extensive discovery in the hope that the process will ultimately reveal relevant evidence. To pass muster in this Circuit a complaint "must allege with some specificity the acts constituting the fraud," *Decker v. Massey–Ferguson, Ltd.,* 681 F.2d 111, 114 (2d Cir.1982) (citation omitted). Conclusory allegations that defendant's conduct was fraudulent or deceptive are not enough. *Id.*

■ To state a claim under § 10(b), plaintiff must allege acts indicating an intent to deceive, manipulate, or defraud, *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 192 n. 7, 96 S.Ct. 1375, 1380 n. 7, 47 L.Ed.2d 668 (1976), and Rule 9(b) requires that the circumstances constituting such fraud be stated with particularity. Plaintiff's complaint attempts to satisfy this requirement by quoting from FNBR's representations about its loan portfolio, loan loss provision, the status of merger negotiations with Yapi, and the regulatory review, and then concluding that the defendants knew their representations were not true. In essence, plaintiff claims that the FNBR defendants maintained grossly inadequate loan loss reserves, understated nonperforming loans, overconcentrated the loan portfolio in the real estate sector, and failed to adequately inform its investors about insider loans and the status of the regulatory review. The Court cannot glean from the Complaint the basis upon which plaintiff believes that the defendants *must have known* that loan loss reserves were inadequate, that its loan portfolio was substandard and doomed to be devalued, that the merger with Yapi was doomed to fail, or that the regulatory authorities would come down hard on

FNBR, *other than by focusing on the fact that the financial condition of the bank subsequently deteriorated and that certain of these events came to pass.*

Noticably absent are *details* about specific delinquent loans, whether to an unrelated third party or to an insider, that were so substandard when made as to suggest that FNBR's financial condition was not as rosy as portrayed prior to the economic downturn. Although plaintiff alleges that the individual defendants fraudulently sought to hide the true condition of FNBR, he does not allege that any defendant officer or director attempted to, or succeeded in, unloading their stock in FNBR, a fact from which one could infer knowledge and fraud. Indeed, at oral argument, counsel for certain of the individual FNBR defendants stated that the defendants purchased some $4.5 million of the 10% debentures, a fact which hardly suggests that the defendants knew FNBR was a financial institution in serious trouble.

Given the absence of facts in plaintiff's complaint, the Court refuses to infer that the FNBR defendants purposefully misrepresented the company's financial condition during the class period, and will not speculate that plaintiff was defrauded simply because FNBR suffered more losses than predicted. Plaintiff cannot rely upon a presumption of fraud as a substitute for the specific requirements of Rule 9. *Decker v. Massey–Ferguson, Ltd.*, 681 F.2d at 114. No facts have been proferred to suggest that the true financial condition of FNBR was other than as reported prior to the economic downturn in 1990–91. Accordingly, plaintiff's Complaint is dismissed as against the FNBR defendants for failure to meet the Rule 9(b) threshold. Moreover, inasmuch as plaintiff has already had the opportunity to file an amended Complaint, the Court is not inclined to give leave to replead.

### III. The § 10(b) Claims Against Yapi

█ Yapi, a Turkish banking company, was for a time a prospective purchaser of FNBR. However, citing an adverse change in FNBR's financial condition, Yapi terminated the merger talks and thus the agreement with FNBR never reached the proxy stage.

Plaintiff argues that Yapi is primarily liable for securities fraud because it failed to disclose whatever adverse information it had learned about the actual financial condition of FNBR when announcing that the merger would not take place. Plaintiff also alleges that Yapi is secondarily liable for aiding and abetting FNBR's fraud.

I find that plaintiff has failed to state a claim under either theory. With respect to the non-disclosure and concealment charge, I find Judge Ditter's well-reasoned decision in *Gordon v. Diagnostek, Inc.*, 812 F.Supp. 57 (E.D.Pa.1993) not only helpful with this issue, but also directly on point. In a case which is strikingly similar to this case, Judge Ditter held that an acquiring company in a failed acquisition had no duty to disclose to the target company's shareholders that the target company had inflated earnings. Citing *Chiarella v. United States*, 445 U.S. 222, 232–34, 100 S.Ct. 1108, 1116–17, 63 L.Ed.2d 348 (1980), Judge Ditter found that the duty to disclose arises only from a specific relationship between two parties which either explicitly or implicitly requires such disclosure, and that the acquiring company "had no relationship with, and therefore no duty to, the shareholders of Diagnostek." 812 F.Supp. at 60.

As in *Gordon,* plaintiff does not allege that Yapi had a duty to disclose which arose from a relationship of trust and confidence between Yapi and FNBR shareholders. Consequently, I find that plaintiff fails to state a claim for Yapi's direct liability under § 10(b).

With respect to plaintiff's theory that Yapi is secondarily liable for aiding and abetting FNBR's fraud, this claim must be dismissed because of my finding that there were no securities law violations by the primary actors, the FNBR defendants.

### IV. Pendent Common Law State Claims

Having dismissed plaintiff's federal claims, I decline to exercise jurisdiction over his common law state claims in Counts III and IV, which are accordingly dismissed. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

## CONCLUSION

For the reasons set forth above, the motions of the FNBR defendants for dismissal pursuant to Fed.R.Civ.P. 12(b)(6) and 9 are granted, and the Complaint is dismissed without leave to replead. The separate motion of Yapi for dismissal of all claims against it pursuant to Rule 12(b)(6) is granted as well. In addition, plaintiff's common law claims are dismissed.

ALL OF THE ABOVE IS SO ORDERED.