### In re SOLV–EX CORPORATION SECURITIES LITIGATION

### No. 96 CIV. 7575(RMB).

United States District Court, S.D. New York.

Sept. 6, 2000.

---

Wechsler Harwood, Weinstein & Associates, New York City, Steven G. Schulman, Samuel H. Rudman, Milberg, Weiss, Bershad, Hynes & Lerach, LLP, New York City, for Alfonso L. Sedita, Joseph B. Grossman, Stephen Disch, Lynn Boyer, Albert Halegoua.

Robert A. Wallner, Milberg Weiss Bershad Hynes & Lerach, LLP, New York City, John Halebian, Wechsler, Harwood, Halebian & Feffer, L.L.P., New York City, for Erik Baum, Peter J. Fournier, Kevin J. Gurl, Zoe Graves.

Andrew J. Levander, Louis M. Solomon, Swidler, Berlin, Shereff, Friedman, L.L.P., New York City, for W. Jack Butler

Laurence Shiff, Shiff & Tisman, New York City, for Herbert M. Campbell, II, John S. Rendall.

Herbert M. Campbell, II, Albuquerque, NM, pro se.

John S. Rendall, Albuquerque, NM, pro se.

## ORDER

BERMAN, District Judge.

### I. *Introduction*

By motion dated July 27, 1999, Defendants John S. Rendall ("Rendall"), Chief Executive Officer and Chairman of the Board of Solv–Ex Corporation ("Solv–Ex"), W. Jack Butler ("Butler"), President and Board member of Solv–Ex, and Herbert M. Campbell, II ("Campbell"), Senior Vice President and Secretary of the Board of Solv–Ex (collectively "Defendants"), moved to dismiss this securities law class action pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ.P.") 9(b) and 12(b)(6) and the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u–4(b)(2) and (3).[1] Plaintiffs had purchased shares of Solv–Ex between February 15, 1995 and September 30, 1996 (the "Class Period") and asserted claims against Defendants, among other things, for fraud under Section 10(b) ("Section 10(b)") of the Securities and Exchange Act of 1934 as amended, 15 U.S.C.A. § 78j(b) ("Exchange Act"), and for "controlling person" liability under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a) ("Section 20(a)").[2] **For the reasons set forth below, Defendants' motion to dismiss is denied.**

### II. *Background*

The following allegations are set forth in Plaintiffs' Second Consolidated Amended Complaint ("Complaint") and are accepted as true for purposes of this motion to dismiss. *Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996).

---

1. The case was initially styled *Sedita v. Solv–Ex Corp. et al.* Pursuant to an Order of United States District Judge Loretta A. Preska, dated December 17, 1996, "the action styled *Sedita v. Solv–Ex Corp. et al.,* 96 Civ. 7575 ... was consolidated for all purposes with the action styled *Grossman v. Butler et al.,* 96 Civ. 8744 .... [T]he Consolidated Actions shall have the following caption: IN RE SOLV–EX CORPORATION SECURITIES LITIGATION."
   On or about August 1, 1997, Solv–Ex filed a notice of bankruptcy in the United States Bankruptcy Court for the District of New Mexico ("Bankruptcy Court"). By Order dated July 31, 1998, the Bankruptcy Court confirmed a "Plan of Reorganization" of Solv–Ex which barred plaintiffs in this action ("Plaintiffs") from proceeding with claims against Solv–Ex.

2. Plaintiffs have also asserted state claims under New Mexico Statute §§ 58–13B–30 and 40, and for negligent misrepresentation

Solv–Ex is a New Mexico corporation which claimed to have developed a "commercially viable" technology to process and extract bitumen (a type of crude oil) from oil tar sands. (Complaint ¶ 2). During the Class Period, Solv–Ex purported to be "in the process of implementing a project to commence mining operations and to construct a commercial oil extraction and refining plant and an accompanying mineral co-production plant facility in Alberta, Canada" (the "Alberta Plant" or "Alberta Project"). (*Id.*). The construction of these facilities was never completed and the Alberta Plant never commenced operation. (*Id.*).

As of September 18, 1996, Defendants owned 21% of the approximately 22 million shares of outstanding Solv–Ex common stock, with Rendall owning 16.2%, Butler owning 3.8%, and Campbell owning .8%. (Complaint ¶ 30).

Plaintiffs allege that "to keep the Company from collapsing, throughout the Class Period defendants aggressively touted [Solv–Ex's] technology, the soundness of the Company's development plans, the value of the mineral resources covered by the Company's Alberta leases, and their ability to complete both the financing and the construction of commercial production facilities in Alberta by late 1996 or early 1997. However, defendants' scheme for touting the Company's capabilities and plans was constructed on a series of false and misleading statements and omissions of material facts." (Complaint ¶ 5).

According to the Complaint, "one of defendants' principal means of assuring investors of the soundness of [Solv–Ex's] plans and the viability of its timetable for successful implementation of those plans" was their reference to an alleged "thorough independent review," performed by Pace Consultants Inc. ("Pace"), of a "feasibility study" concerning the Alberta Pro-

ject. (Complaint ¶ 6). On February 15, 1995, Solv–Ex issued a press release stating:

> "Solv–Ex ... has completed the feasibility study for construction and operation of [the Alberta Plant]. The plant is designed to produce 10,000 barrels of pipelineable crude oil per day, together with 64,000 metric tons of smelter grade alumina ... The oil extraction and upgrading sections of the feasibility study have been subjected to a thorough independent review by the Pace Consultants Inc." (Complaint ¶ 54).

Plaintiffs allege that the press release was misleading in that Pace had not conducted a " 'thorough independent review' as that term is generally understood by public investors. As defendants knew but did not disclose, Pace only reviewed a portion of the costs covered in the feasibility study and it did not subject the information in the feasibility study to any 'independent review.' Rather the Pace firm [ ] merely reviewed the methodology that Solv–Ex used in generating the raw data, which was supplied by Solv–Ex and not independently reviewed or verified by Pace." (Complaint ¶ 55).

Plaintiffs also allege that Solv–Ex continued to "tout" the "thorough independent review" throughout the Class Period. For example, the Pace "independent review and audit" was referred to in a September 12, 1995 memorandum to shareholders, wherein Rendall stated that "Solv–Ex's projected operating and capital costs have been independently audited and supported by the Pace Consultants Inc. which is part of the Jacobs Engineering Group." (Complaint ¶ 67). In a September 26, 1995 press release, Solv–Ex stated that "the operating cost of the first stage oil extraction plant to be built ... on its oils sands lease ... is projected at $5.21 per barrel at planned capacity of 14,000 barrels a day, according

to the final audit report by the Pace Consultants, John Rendall, Solv–Ex chairman and chief executive officer announced." (Complaint ¶ 72). A September 15, 1996 *Wall Street Journal* advertisement placed by Solv–Ex stated that "[t]he estimated cost for Solv–Ex to produce oil is less than $6 per barrel. This has been verified by independent engineering firms." (Complaint ¶ 126).

A *Financial Post* article, dated March 16, 1996, states:

Solv–Ex says Pace Consultants (Jacobs Engineering Group) did a final audit on the oil sands plant, placing an operating cost of the first stage of production at US$5.21 a barrel. However, Pace isn't standing by Solv–Ex's claims.

'We reviewed a feasibility study they prepared; audit is their term.' said Pace vice-president Dan Foley. 'We only commented on a US$ 2.25 portion of the US$ 5.21. **We're not used to our name being kicked around in these kinds of circles.'**

Jacob's Engineering chief financial officer, John Prosser, also said Solv–Ex was not authorized to use Jacob's name in its publicity.

'We weren't hired to give opinions for the public market. We did work for them. **Throwing a number out without backup on what those numbers mean can be misleading to the public,'** he said. (Complaint ¶ 104).

Plaintiffs also allege that, throughout the Class Period, Solv–Ex made numerous misleading statements as to when the Alberta Plant would begin commercial operation. The Complaint states that "although [Solv–Ex] repeatedly represented throughout the Class Period that the Alberta Project was on track to begin commercial oil production by late 1996 or early 1997, unbeknownst to investors, Solv–Ex was representing to the Alberta Energy and Utilities Board ('AEUB') during the Class Period that it was constructing only an 'experimental' plant." (Complaint ¶ 7). A February 1995 press release states that "oil production [is to commence] by mid-to-late 1996." (Complaint ¶ 54). A December 18, 1995 Solv–Ex press release stated "the target date for commencement of oil production from the Bitumount lease is late 1996 or early 1997..." (Complaint ¶ 86). Additionally, a document entitled "Profile," dated February 1996, which was allegedly distributed by Solv–Ex as part of an investor package, stated that, among other things, "Solv–Ex ... is on the threshold of commercial production of oil ... from its oil sand leases in the Athabasca region of Alberta, Canada." (Complaint ¶ 100).

On June 28, 1995, Solv–Ex submitted an application to the AEUB stating that "this application is for an experimental project. Solv–Ex wishes to determine the feasibility of a co-production facility to produce pipelineable crude oil (PCO) from the Athabasca oil sands and to extract mineral values from fine clay tailings." (Complaint ¶ 57). The application further stated that "[b]y July 2002, should results confirm expectations, an application will be submitted to the AEUB and other government departments at that time for approval for a commercial scheme." (*Id.*). Plaintiffs allege that "[w]hile defendants were publicly representing that they were in the process of developing a commercial project, they were telling the Canadian government that the project was 'experimental,' in direct contravention of their public statements." (Complaint ¶ 58).

Plaintiffs also allege that Solv–Ex issued misleading statements concerning the receipt of governmental permits necessary to proceed with the Alberta Plant. "Solv–Ex issued a press release announcing that it had received formal approval from the

AEUB of the Alberta Ministry of Energy for the Company's plans to proceed with the Alberta Project." (Complaint ¶ 85).

Rendall said the [A]EUB approval was the first to be issued for a grass roots oil sands plant under the relatively new Alberta environmental laws and permitting regulations.... As a part of the permitting process, Solv–Ex conducted an extensive program of community consultation with environmental groups. (*Id.*).

Plaintiffs allege that this press release was materially false and misleading because Solv–Ex "failed to disclose or reflect that its permits to produce oil [were] subject to the completion of certain environmental studies which the Company had not completed even as it was repeatedly claiming that its permits were 'final.'" (Complaint ¶ 85). The Complaint specifically lists at least four separate environmental plans requiring approval by the Alberta government, before the permits would be issued. (*Id.*).

Plaintiffs further allege that Solv–Ex made a number of misleading statements in filings with the Securities and Exchange Commission ("SEC"). For example, Solv–Ex's 1995 10–K, signed by each of the Defendants, stated:

[O]n the basis of its work to date, projections of revenues, capital and operating costs, independent third party evaluation of its technologies and the markets

for anticipated products, management believes it will be able to complete financing for both projects... (Complaint ¶ 74).

Plaintiffs allege that these statements were materially false and misleading because they failed to disclose that Pace "had not performed an 'independent evaluation of [Solv–Ex's] technologies' ... that financing through regular channels was unavailable and that the project was experimental in nature." (Complaint ¶ 75).[3]

Plaintiffs also allege that materially false and misleading statements were made in a Solv–Ex 1996 10–Q Form, signed by Rendall and Butler, filed with the SEC. One of the notes to the Solv–Ex consolidated financial statement stated:

In December, 1995, the Company received a loan from a stockholder, in the amount of $1 million, to fund daily operations. Principal payments made by the Company on the loan during the quarter ended March 31, 1996, amounted to $504,272. Subsequent to March 31, 1996, the remaining balance of the loan and associated accrued interest, in the amount of $29,158, was paid to the stockholder. (Complaint ¶ 122).

The Complaint alleges that this statement was materially false and misleading "because it failed to disclose (a) that Rendall had improperly margined $3 million of his restricted Solv–Ex common stock to provide the Company with working capital

---

3. The 1995 10–K also provided that:

Much of the Company's work during the mid–1980's was performed pursuant to a joint venture with Shell Canada Limited during 1987 and 1988, which successfully processed approximately 1,000 tons of oils sands for bitumen recovery using a solvent extraction process ... The venture was terminated in 1988 due to declining oil prices at the time, but it served to establish the technical feasibility of the Company's bitumen recovery process. (Complaint ¶ 78).

The Complaint alleges that these statements were materially false and misleading because "they failed to disclose or reflect the true facts that the technology was experimental, that the cancellation of the joint venture with Shell Canada was only peripherally related (if at all) to declining oil prices, and that the prestigious Alberta Oil Sands Technology and Research Authority [ ] had concluded that the technology was not commercially viable." (Complaint ¶ 79).

and that he had improperly removed the restricted legend from the shares he had margined, and (b) that the SEC had commenced an investigation into whether Solv–Ex or persons associated with Solv–Ex had violated the registration, disclosure or anti-fraud provisions of the federal securities laws." (Complaint ¶ 123).

The Complaint also cites a June 26, 1997 report carried by *PR Newswire,* and published by the *Bloomberg News Service,* which states that Robert Gill, a Solv–Ex laboratory coordinator, "confirmed that the sole possible purpose for attempting to 'produce' bitumen at Solv–Ex's 'scrapyard' plant was to defraud investors. The plant is incapable of producing bitumen profitably, much less remotely approach Solv–Ex's stated efficiency claims." (Complaint ¶ 135).

### III. *Standard of Review*

In resolving a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Bernheim,* 79 F.3d at 321. A complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In other words, the burden upon the movant is very substantial as the issue before the Court on a Rule 12(b)(6) motion "is not whether a plaintiff is likely to prevail ultimately, 'but whether the claimant is entitled to offer evidence to support the claims. Indeed, it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test.'" *International Motor Sports Group, Inc., v. Gordon,* No. 98 Civ. 5611,

1999 WL 619633 *5 (S.D.N.Y. August 16, 1999) (quoting *Weisman v. LeLandais,* 532 F.2d 308, 311 (2d Cir.1976) (per curiam)). "The motion to dismiss for failure to state a claim is disfavored ..." *Bower v. Weisman,* 639 F.Supp. 532, 539 (S.D.N.Y.1986) (citing *Arfons v. E.I. du Pont De Nemours & Co.,* 261 F.2d 434, 435 (2d Cir.1958)). While "'the well-pleaded material allegations of the complaint are taken as admitted ... conclusions of law or unwarranted deductions of fact are not admitted.'" *First Nationwide Bank v. Gelt Funding Corp.,* 27 F.3d 763, 771 (2d Cir.1994)..

Fed R. Civ. P. 9(b) requires plaintiffs in securities fraud cases to state "the circumstances constituting fraud ... with particularity." *Novak v. Kasaks,* 216 F.3d 300, 312 (2d Cir.2000). The PSLRA requires that "whenever plaintiffs allege, on information and belief, that defendants made material misstatements or omissions, the complaint must 'state with particularity all facts on which that belief is formed.'" *Id.* (quoting 15 U.S.C. § 78u–4(b)(1)).

### IV. *Analysis*

#### A. Fraud Claims: Section 10(b)

■ To state a prima facie case under Section 10(b), a plaintiff must allege: i) a misrepresentation or omission; ii) of a material fact; iii) made with scienter; iv) upon which plaintiffs relied; and v) which proximately caused the plaintiff's injuries. *See Acito v. IMCERA Group, Inc.,* 47 F.3d 47, 52 (2d Cir.1995). Plaintiffs argue that they have met this burden. Defendants argue that "plaintiffs impermissibly seek to use the group pleading doctrine to satisfy the requirement that they separately allege as to each of the Individual Defendants facts strongly supporting on inference of scienter."[4] (Defendants' Opening

---

4. Thus, Defendants challenge element three, i.e., whether Plaintiffs have properly alleged

that Defendants acted with scienter. For purposes of the instant motion, Defendants do

Brief at 3). Plaintiffs argue that they have adequately pled scienter and that the PSLRA has imposed no limitation on group pleading. (Plaintiffs' Brief at 20–21).

■ The PSLRA has not abolished the use of group pleading in Section 10(b) cases. *In re Am. Bank Note Holographics, Inc. Sec. Litig.*, 93 F.Supp.2d 424, 442 (S.D.N.Y.2000)("It is well settled that plaintiffs may engage in so-called group-pleading under 10(b) ... nothing in the PSLRA has altered that doctrine."); *In re Livent, Inc. Sec. Litig.*, 78 F.Supp.2d 194, 219 (S.D.N.Y.1999) ("The Outside Directors maintain that the group pleading doctrine is no longer good law in light of the PSLRA. However, this position [has been] considered and rejected"); *In re Oxford Health Plans, Inc. Sec. Litig.*, 187 F.R.D. 133, 142 (S.D.N.Y.1999) ("This Court agrees that the PSLRA has not altered the group pleading doctrine").

■ Under the group pleading doctrine, Plaintiffs may "rely on a presumption that statements in prospectuses, registration statements, annual reports, press releases, or other group-published information, are the collective work of those individuals with direct involvement in the everyday business of the company." *Polar Int'l Brokerage Corp. v. Reeve*, No. 98 Civ. 6915, 2000 WL 827667 *8 (S.D.N.Y. June 27, 2000) (quoting *In re Oxford Health Plans*, 187 F.R.D. at 142). "No specific

connection between fraudulent representations in [a published company document] is necessary where ... defendants are insiders or affiliates" of the company. *DiVittorio*, 822 F.2d at 1247 (citations and quotations omitted); *In re Livent, Inc. Secs. Litig.*, 78 F. Supp.2d 194, 219 (S.D.N.Y. 1999) (group pleading doctrine permits plaintiffs "to allege that misstatements contained in company documents may be presumed to be the work of the company's officers and directors").

Plaintiffs here are relying on, among other things, allegedly misleading Solv–Ex press releases, Solv–Ex SEC filings, and documents allegedly distributed by Solv–Ex as part of an investor package. Defendants are all alleged to have been senior officers of Solv–Ex, who participated "in the day to day operations of the Company at the highest levels" (Complaint ¶ 32), including the preparation and/or distribution of some or all of these documents.[5]

■ The Court believes that Plaintiffs here, as in *American Bank Note*, 93 F.Supp.2d at 442, have adequately alleged "facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness" by Defendants. *Press v. Chemical Inv. Servs. Corp.*, 166 F.3d 529, 538 (2d Cir.1999) (in order to properly plead scienter under the PSLRA a complaint must allege "either (a) facts to show that Defendants had both motive and opportunity to commit fraud or (b) facts that constitute strong circumstantial evidence

not contest the other elements of a prima facie case under Section 10(b). (*See* Defendants Reply Brief at n.1).

5. Additionally, Plaintiffs allege that "Mr. Rendall personally issued many of the misleading public statements regarding the project. Messrs. Rendall and Campbell participated in a conference call attempting to refute negative comments about the Alberta Project. The

AEUB [license] application stated that all communications regarding the application be directed to Mr. Campbell. All three Individual Defendants also were responsible for signing, reviewing and/or disseminating the Company's public documents [and] Butler, Campbell and Rendall all signed SEC filings." (Plaintiffs' Brief at 23 (citations omitted)).

of conscious misbehavior or recklessness."). For example, Plaintiffs have alleged that Defendants "knew facts or had access to information suggesting that their public statements were not accurate." *Novak*, 216 F.3d at 311. As noted, through Solv–Ex prospectuses and press releases, Defendants allegedly made representations to investors that Solv–Ex was on the verge of launching a commercial production facility. (*See* Complaint ¶¶ 7, 54, 86, 100). At the same time, Defendants allegedly represented to the Alberta government in a license application that Solv–Ex was seeking to construct an experimental facility. (Complaint ¶ 57). Further, the Complaint alleges that beginning with a press release in February 1995, Defendants, on numerous occasions, touted an alleged thorough "independent review and audit" performed by Pace concerning the commercial feasibility of the Alberta Plant. (*See* Complaint ¶¶ 6, 54, 67, 72, 126). At the same time, it is alleged that Defendants knew that Pace never independently verified Solv–Ex's data concerning its technologies or mineral resources; that the underlying feasibility study had numerous material methodological flaws; and that Pace reviewed the methodology in generating the raw data, and not the raw data itself. (Complaint ¶ 55).

The Complaint alleges other facts which support the Court's determination that Plaintiffs have adequately proffered evidence of conscious misbehavior or recklessness by Defendants, including the following: (i) Solv–Ex announced that it had received formal approval from the Alberta Government to proceed with the oil-sand facility project, but in fact, such approval was contingent upon the completion of a number of environmental studies; (ii) in a 1995 10–K filed with the SEC, signed by all three Defendants, Solv–Ex stated that a 1988 Solv–Ex joint venture was terminated due to declining oil prices when, in fact, the joint venture was terminated because Solv–Ex's technology was not "commercially viable." (Complaint ¶¶ 78, 79).

## B. Fraud Claims: Section 20(a)

Section 20(a) of the Exchange Act imposes joint and several liability on any person who "controls any person liable under any provision of this title or any rule or regulation thereunder." *Ruskin v. TIG Holdings, Inc.*, No. 98 Civ. 1068, 2000 WL 1154278 *7 (S.D.N.Y. Aug. 14, 2000); *In re Livent*, 78 F.Supp.2d at 221.

Defendants assert: "[P]laintiffs failure to adequately allege scienter on the part of the Individual Defendants ... dooms their Section 20(a) claim." Plaintiffs argue that they are not required to allege or prove scienter in connection with a Section 20(a) violation, and that even if scienter were a requirement, Plaintiffs have (sufficiently) pled that the Defendants acted with the requisite state of mind. *See* Plaintiffs Brief at 25 n.16 ("Even if pleading 'culpable participation' were a requirement for setting forth a claim under Section 20(a) in the Second Circuit ... plaintiffs sufficiently pled that the Individual Defendants had the requisite scienter.").

■ To surmount a motion to dismiss a claim under Section 20(a), a plaintiff must allege "(1) an underlying primary violation by the controlled person; (2) control [by the defendant] over the culpable participation in the fraud perpetrated by the controlled person; and (3) particularized facts as to the controlling person's culpable participation in the fraud." *Ellison v. American Image Motor Co., Inc.*, 36 F.Supp.2d 628, 637 (S.D.N.Y.1999).

Plaintiffs have met their Section 20(a) pleading burden. They alleged a violation of Section 10(b) by (the controlled person) Solv–Ex. (Complaint ¶¶ 139–153).[6] In addition, among other things, it is alleged that each Defendant participated "in the day to day operations of the Company at the highest levels" (Complaint ¶ 32) and signed a false and/or misleading SEC filing, raising a sufficient inference of control. *Thomson Kernaghan & Co v. Global Intellicom, Inc.*, No. 99 Civ. 3005, 2000 WL 640653 *7 (S.D.N.Y. May 17, 2000) ("the signing of a fraudulent SEC filing raises a sufficient inference of control"). The Complaint also states that "the individual Defendants participated in the drafting, preparation, and or approval of the various public and shareholder and investor reports and other communications ... during the Class Period, were aware of and recklessly disregarded the misstatements contained therein and omissions therefrom, and were aware of their materially false and misleading nature." (Complaint ¶ 34). And, Plaintiffs have, at the motion to dismiss stage, sufficiently asserted "culpable participation" by alleging, among other things, that Defendants held high level Solv–Ex management positions, were members of the Board of Directors, held substantial equity interests in Solv–Ex, were aware of the experimental nature of the Alberta Plant, and were responsible for issuing false and misleading statements. *See Ruskin v. TIG Holdings, Inc.*, No. 98 Civ. 1068, 2000 WL 1154278 *7 (S.D.N.Y. Aug. 14, 2000); *In re Oxford Health Plans*, 187 F.R.D. at 143 ("Defendants ... held high-level management positions in which they were involved in the day-to-day operations of Oxford, were aware of the internal control and accounting problems, were members of the Board, held substantial equity interest in Oxford, allegedly participated directly in disseminating the false and misleading financial statements and other statements, and traded while in possession of material non-public information. Plaintiffs allege sufficiently that these defendants are controlling persons who participated meaningfully in the fraud within the meaning of Section 20(a)").[7]

## V. *Conclusion*

For the foregoing reasons, Defendants' motion to dismiss [54–1] is denied in its entirety. Counsel are directed forthwith to contact Court Deputy Christine Murray (212 805–6715) to set a scheduling/status conference.

---

6. *See also, supra* Section IV. A (finding that Plaintiffs have alleged a prima facie violation under Section 10(b) by alleging, among other things, that Defendants "were publicly representing that they were in the process of developing a commercial project, they were telling the Canadian government that the project was 'experimental' in direct contravention of their public statements.").

7. Because Defendants' motion to dismiss Federal Securities Law claims is denied, the Court need not address issues concerning supplemental jurisdiction over state law claims at this point.