SHEEHAN, et al., Plaintiffs,

v.

LITTLE SWITZERLAND
et al., Defendants.

No. CIV. A. 99–176–SLR.

United States District Court,
D. Delaware.

March 19, 2001.

Norman M. Monhait, Edward B. Rosenthal, Rosenthal, Monhait, Gross & Goddess, Wilmington, Delaware. Counsel for the plaintiffs. Robert C. Shubert, Juden Justice Reed, Shubert & Reed, San Francisco, California. Of counsel for plaintiffs.

Alan J. Stone, Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware. Counsel for defendants Little Switzerland, Inc ., John E. Toler, Jr., and Thomas C. Liston. R. Todd Cronan, Goodwin, Procter & Hoar, Boston, Massachusetts. Of Counsel for defendants Little Switzerland, Inc., John E. Toler, Jr., and Thomas C. Liston. Andre G. Bouchard, Joel E. Friedlander, Bouchard, Margules & Friedlander, Wilmington, Delaware. Counsel for defendant C. William Carey. Majorie S. Crooke, Terrence J. Galligan, Cooke, Clancy & Gruenthal, Boston, Massachusetts. Of Counsel for defendant C. William Carey. Gregory P. Williams, Esquire and Raymond J. DiCamillo, Richards, Layton & Finger, Wilmington, Delaware. Counsel for defendants Destination Retail Holdings Corporation and Stephen G.E. Crane. William J. McSherry, Jr., Janine M. Gargiulo, Arent Fox Kitner Plotkin & Kahn, New York, New York. Of counsel for defendants Destination Retail Holdings Corporation and Stephen G.E. Crane.

## MEMORANDUM OPINION

SUE L. ROBINSON, Chief Judge.

## I. INTRODUCTION

Plaintiffs Gregory M. Sheehan, Kenneth W. Fosterud, Caroline Perla, and Anthony J. Rutzen (collectively, "plaintiffs") filed a class action complaint against defendants Little Switzerland, Inc. ("LSI"), John E. Toler, Jr., Thomas S. Liston[1], C. William Carey, Destination Retail Holdings Corporation ("DRHC"), and Stephen G.E. Crane[2], alleging violations of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a et seq. ("the 1934 Act") and Rule 10b–5 promulgated by the Securities and Exchange Commission, in connection with a failed merger between LSI and DRHC. (D.I.30, ¶¶ 1–3)

Jurisdiction over the federal securities law claim is authorized under 28 U.S.C. § 1331 and 15 U.S.C. § 78aa. Presently before the court are three separate motions to dismiss the first amended class action complaint. The three motions were filed by (1) the LSI defendants; (2) Carey[3]; and (3) the DRHC defendants. All three motions seek relief pursuant to Fed. R.Civ.P. 9(b) for failing to allege facts giving rise to a strong inference of scienter, as required under the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u–4(b)(2)(Supp. IV 1998)("PSLRA"), and under Fed.R.Civ.P. 12(b)(6) for failure to state a cognizable claim. (D.I. 31; D.I. 34; D.I. 55) In addition, defendant Crane seeks to dismiss the action pursuant to Rule 12(b)(2) for lack of personal jurisdiction. The parties submitted extensive briefs on these issues, and oral arguments were heard on September 28, 2000. For the following reasons, the court grants in part and denies in part defendants' motions.

## II. BACKGROUND

### A. The Parties

Each named plaintiff purchased shares of LSI common stock during the period from January 7, 1998 through and including July 15, 1998 ("the class period"). (D.I.30, ¶ 1)

Defendant LSI is a Delaware corporation with its principal place of business in St. Thomas, U.S. Virgin Islands. (D.I.30, ¶ 12) LSI is a specialty retailer of luxury items with stores in the Caribbean Islands, Alaskan cruise ship destinations, and the Bahamas. (*Id.*) Prior to the events surrounding this action, LSI was the exclusive authorized retailer of Rolex watches for the islands upon which it conducted business, with sales of Rolex watches accounting for approximately 25% of its total sales. (*Id.*)

Defendant John E. Toler, Jr. is the former Chief Executive Officer and a former director of LSI. (D.I.30, ¶ 13) Defendant C. William Carey is LSI's former Chairman of the Board and a former director. (D.I.30, ¶ 14) Defendant Thomas S. Liston is the former Chief Financial Officer and a former director of LSI. (D.I.30, ¶ 15)

Defendant DRHC is a Nevis corporation with its principal place of business in Freeport, Bahamas. (D.I.30, ¶ 16) DRHC operates retail stores in the Bahamas, the Caribbean, and Alaska. (*Id.*) Defendant

---

1. LSI, Toler, and Liston are collectively referred to as the "LSI defendants." Although defendant Carey is the former Chairman of the Board and a former director of LSI, he is represented by separate counsel in this matter.

2. DRHC and Crane are collectively referred to as the "DRHC defendants."

3. Carey's motion to dismiss incorporates the arguments of the LSI defendants with some minor additions. (D.I.34)

Stephen G.E. Crane was the President and sole shareholder of DRHC. (D.I.30, ¶ 17) Crane is a resident of the Bahamas and a citizen of the United Kingdom. (D.I.57, ¶ 1)

### B. Plaintiffs' Securities Fraud Claims Under Section 10(b)

The dispute centers around the failed merger between LSI and DRHC. Plaintiffs complain that defendants misled the markets in two distinct ways around the time of the merger announcement and its subsequent failure. First, plaintiffs allege that defendants failed to disclose material information about the expiration of a "firm financing commitment" from their investment bankers. Second, plaintiffs allege that LSI made positive statements about sales without disclosing that Rolex ceased shipping products to LSI one month earlier.

#### 1. Financing Statement

On February 4, 1998, LSI and DRHC released a joint press release announcing that they had entered into a merger agreement providing for DRHC's acquisition of all of LSI's outstanding shares of common stock at $8.10 per share. (D.I.30, ¶ 32) The press release stated: "Donaldson, Lufkin and Jenerette, Inc. and DLJ Bridge Finance, Inc. have provided firm financing commitment letters to [DRHC] to provide the funds necessary to consummate the merger." (*Id.*) The press release also stated that the parties "expected that the transaction will close in May 1998." (*Id.*) The press release omitted the fact that the financing agreement between DRHC and Donaldson, Lufkin and Jener-

ette, Inc. and DLJ Bridge Finance, Inc. (collectively, "DLJ") expired by its own terms on April 30, 1998. (D.I.30, ¶ 33)

After DRHC and LSI announced the merger agreement, LSI repeated the alleged misstatements in various SEC filings by attaching a copy of the merger agreement.[4] The merger agreement referred to the commitment letters without mentioning the expiration date. Section 4 .04 entitled "Financing" stated:

> [DRHC] and Sub have financing commitments in place which, together with cash presently on hand, will provide sufficient funds to purchase and pay for the Shares pursuant to the Merger in accordance with the terms of this Agreement and to consummate the transactions contemplated hereby. Neither [DRHC], Sub nor any of the [DRHC] Related Entities has any reason to believe that any condition to such financing commitments cannot or will not be waived or satisfied prior to the Effective Time. [DRHC] has provided to [LSI] true, complete and correct copies of all financing commitment letters, including any exhibits, schedules or amendments thereto.

(D.I. 30, ¶ 37; D.I. 33, Tab 6 at A–78)

On April 2, 1998, LSI mailed proxy statements to its shareholders and filed its Form 14A Proxy Statement with the SEC regarding the merger plans with DRHC. The proxy statement stated that DLJ provided DRHC a commitment letter which provided financing "subject to the conditions set forth in such commitment letter." (D.I. 33, Tab 8 at A–124) The proxy statement also indicated that the "Merger

---

**4.** LSI incorporated the merger agreement into several publicly disseminated documents. On February 6, 1998, Toler filed and signed LSI's Form 8–K. On February 10, 1998, Toler and Carey sent a letter to LSI shareholders, advising them of the merger agreement.

LSI's Schedule 14A was filed the same day. On April 2, 1998, LSI mailed its proxy statements to shareholders. On April 15, 1998, Liston signed and filed LSI's Form 10–Q for the period ending February 28, 1998. (D.I.30, ¶¶ 37–43)

Agreement does not contain a financing condition and, therefore, the obligation of [DRHC] to consummate the Merger is not subject to obtaining financing from [DLJ]." (*Id.*)

On April 21, 1998, DRHC told the LSI defendants that DLJ had advised that the financing commitment would not be extended upon its expiration date of April 30, 1998. (D.I.30, ¶ 44) On May 4, 1998, after the markets closed, LSI issued a press release stating:

> Little Switzerland, Inc. (NASDAQ: LSVI) today announced that it had received correspondence from [DRHC's] counsel indicating that [DRHC's] financing commitment letters from [DLJ] had terminated on April 30, 1998 in accordance with their terms and that DLJ at this particular time, did not intend to extend or renew the commitment letters.

(D.I.30, ¶ 45) On May 8, 1998, the LSI shareholders approved the merger at a Special Meeting of Stockholders. (D.I. 33, Tab 11 at A–270)[5] On June 9, 1998, after allowing DRHC an extension of time to secure alternative financing, LSI terminated the merger agreement. (D.I. 30, ¶ 61; D.I. 33, Tab 14 at A–295)

On February 5, 1998, the first trading day following defendant's merger agreement, LSI's stock rose from $7.313 per share to a high of $7.875 per share, closing at $7.75. Between that time until LSI announced that the DLJ commitment letters had terminated, LSI's stock traded no lower than $7.625 per share, and no higher than $8 per share. (D.I.30, ¶ 35) On May 5, 1998, the first trading day following the announcement, LSI's shares closed at $5.688, a decline of 28% from the previous day's close of $7.953. (D.I.30, ¶ 46) By

July 15, 1998, it had declined to $4.063. (D.I.30, ¶ 47)

Plaintiffs allege that the various statements omitting the expiration date of the DLJ commitment letters were intended to give the impression that DRHC's ability to fund the transaction was assured. Plaintiffs claim such an impression was false and misleading because the DLJ commitment expired prior to the anticipated closing date of the merger. Plaintiffs contend that by omitting that fact, defendants removed a major uncertainty as to the consummation of the transaction. (D.I.30, ¶ 44)

Defendants claim that the financing statement allegations fail to allege facts giving rise to a strong inference of scienter. They argue that plaintiffs have failed to allege facts demonstrating that any defendant knew at the time of the merger agreement that the financing commitment secured by DRHC not only would expire but also would not be renewed prior to the closing of the merger. Defendants also argue that the financing statements were not material, nor were they false or misleading when made.

The LSI defendants argue that if the court finds a § 10(b) claim, then the class date should be cut off by the time of the April 2, 1998 proxy statement because investors were then informed that the DLJ financing commitments were conditional. Plaintiffs argue that telling investors that the letters were conditional is not important. What is important, according to plaintiffs, is that the commitment letters would expire before the merger was scheduled to be consummated.

The DRHC defendants argue for dismissal because plaintiffs did not distin-

---

**5.** The court will consider matters of public record when deciding a motion to dismiss. *See Children's Seashore House v. Waldman,* 197 F.3d 654, 662 n. 7 (3d Cir.1999). In this case, that includes the various SEC filings referred to in plaintiffs' complaint.

guish between its allegations against DRHC and its allegations against Crane as is required under the PSLRA. The DRHC defendants also note that (1) the only statement attributable to them is the February 4, 1998 press release [6] and (2) as an acquirer, they owed no duty to LSI shareholders.

### 2. Supplier Statement

Plaintiffs make independent allegations against the LSI defendants and Carey involving LSI's relationship with Rolex. Rolex was LSI's largest and most important supplier, accounting for approximately 25% of LSI's total sales. In late 1997, Rolex ceased new shipments to LSI and shortly thereafter refused to support the LSI/Rolex cooperative advertising program.[7] (D.I.30, ¶ 28) On January 7, 1998, LSI issued a press release entitled "Little Switzerland Reports Strong Sales Increases in Second Quarter and First Half of Fiscal Year 1998." (D.I.30, ¶ 29) Plaintiffs specifically complain about the following paragraph:

> "We are into our peak selling season and, based on sales figures to date, we are optimistic that the Company is headed for an impressive third quarter," Mr. Toler said. "We fully expect to build on the momentum of the last six months

and continue to reap benefits from our new sales initiatives and operational efficiencies. Our merchandise assortments are more focused, with greater availability of our best selling items. Computerized reordering for most of our major watch lines is also providing a smoother and more targeted flow of merchandise into our stores."

(*Id.;* D.I. 33, Tab 4 at A–54) The press release also contains a paragraph of precautionary language that states, "[t]he Company's future performance may be adversely affected by, among other things, risks and uncertainties related to ... the Company's ability to retain relationships with its major suppliers of products for resale." (*Id.*) The press release, however, fails to mention that Rolex ceased shipments to LSI in December. (D.I.30, ¶ 30)

Plaintiffs allege that the statement was false and misleading because LSI was touting its efficiencies in reordering from "most of its major watch lines" and its "smoother and more targeted flow of merchandise" while omitting that its most important supplier ceased shipments. (D.I.30, ¶ 30) At the time of the January press release, LSI was being actively pursued as a merger partner. LSI allegedly withheld the information about Rolex ceas-

---

6. The DRHC defendants argue that if the February 4, 1998 press release were misleading, then DRHC was the victim of that deceit, not a co-perpetrator. The failure of the merger led to litigation in this court between LSI and DRHC. *See Little Switzerland, Inc. v. Destination Retail Holding Corp.,* No. 98–315–SLR (D. Del. filed June 10, 1998). That case has been settled and dismissed.

7. Pending before this court is the LSI defendants' motion for sanctions and to strike allegations in the first amended complaint. That motion centers around the allegation that Rolex ceased shipments to LSI in December 1997. According to LSI, Rolex shipped watches to LSI through January 23, 1998— two weeks after the January 7 press release.

The LSI defendants attached to their motion to strike a January 23, 1998 invoice from Rolex indicating that Rolex had, in fact, shipped 308 watches to LSI. (D.I. 43, Tab 1A) The LSI defendants also submitted affidavits of LSI employees, a confirmation letter from Rolex, and other shipping documents to support their claim that Rolex shipped watches to LSI after the January 7, 1998 press release. (D.I. 44; D.I. 45) However, for purposes of a motion to dismiss, the court must accept as true all material allegations of the complaint, and it must construe the complaint in favor of the plaintiff. *See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.,* 140 F.3d 478, 483 (3d Cir.1998).

ing shipments to inflate the value of LSI shares to DRHC and other potential bidders. (D.I.30, ¶ 31)

The LSI defendants argue that the supplier statement is not actionable because it is protected by the PSLRA's statutory safe harbor for "forward-looking statements." 15 U.S.C. § 78u–5(c). The LSI defendants also argue that the press release was not false or misleading when made. The press release does not mention Rolex nor any of LSI's relationships with suppliers. Furthermore, LSI argues that the statement was not material because the merger agreement between LSI and DRHC contemplated the loss of Rolex as a supplier. (D.I. 33, Tab 6 at A–91–92) Since LSI's share price "was determined almost entirely by reference to the merger price" (D.I.30, ¶ 35), the possibility of losing Rolex as a supplier had already been factored into the share price.

In its April 2, 1998 Form 14A Proxy Statement filed with the SEC and mailed to shareholders, LSI discussed the merger plans with DRHC. In a section entitled "The Company's Relationship with Rolex," LSI stated:

> The Company typically orders and receives products from [Rolex] during most months of the year. Since the last shipment of Rolex products in January, 1998, Rolex has suspended shipments of its products to the Company and has orally informed the Company that it will continue to suspend all shipments unless and until the Merger Agreement with [DRHC] is terminated. In that regard, the Company has received copies of correspondence from Rolex to DRHC, which indicate that Rolex does not believe it would be in its best interest to begin a business relationship with DRHC.

> The Company believes that the loss of any major supplier, including Rolex,

could adversely affect the Company's results of operations. Sales of Rolex watches accounted for 24%, 23% and 25% of the Company's sales in fiscal 1997, fiscal 1996 and fiscal 1995, respectively. In order to mitigate the impact on sales during fiscal 1998 of the suspension of shipments of Rolex products, the Company has redistributed Rolex products from lower traffic stores to higher traffic stores. There can be no assurances that Rolex will resume shipments of its products in the future or that the effect on the Company's sales will be mitigated by such redistribution efforts.

(D.I. 33, Tab 8 at A–172) The LSI defendants do not agree that the January 7, 1998 statement was material, misleading, or made with scienter. They argue, however, that if the court finds otherwise, the class period should be cut off as of the April 2, 1998 press release in which they informed their shareholders of their strained relationship with Rolex.

Plaintiffs claim the class period should end on July 15, 1998. On that date, LSI announced that Rolex decided not to resume shipments. (D.I. 33, Tab 15 at A–298) Plaintiffs contend that the April 2, 1998 Proxy Statement merely indicated a suspension of sales "unless and until the merger agreement is terminated," implying that the shipments would resume in the event that the merger failed.

### C. Plaintiffs' "Control Person" Claims Under Section 20(a)

In addition to the primary claims against each defendant under § 10(b), plaintiffs argue that the individual LSI and DRHC defendants are "control persons" under § 20(a). The complaint states:

18. By reason of their stock ownership and executive positions with [LSI], and/or their membership on the Company's Board of Directors, To-

ler, Carey and Liston were "control persons" of the Company within the meaning of § 20(a) of the Exchange Act and had the power and influence, and exercised the same, to cause [LSI] to engage in the illegal and wrongful practices complained herein.

19. By reason of his 100% stock ownership and his executive position with DRHC, Crane was a "controlling person" of DRHC within the meaning of § 20(a) of the Exchange Act and had the power and influence, and exercised the same, to cause DRHC to engage in the illegal and wrongful practices complained of herein.

21. Toler, Carey and Liston participated in the drafting, preparation and/or approval of the public representations complained of herein. Because of their positions and access to material nonpublic information, each of these defendants knew or recklessly disregarded that the adverse facts specified herein had not been disclosed and were being concealed from the public, and that the positive representations that were being made were false and misleading.

(D.I.30)

The LSI defendants contend that the above allegations are insufficient and argue that plaintiffs must allege facts showing that Toler and Liston had the power or potential power to influence and control the activities of LSI. The LSI defendants also contend that plaintiffs failed to allege culpable participation by either Toler or Liston.

Plaintiffs argue that the allegations regarding defendants' positions and their role in managing the companies and participating in the drafting of public state- ments are sufficient to allege control. Plaintiffs also argue that the allegations that defendants knew about the alleged omissions establish culpable participation. Specifically, plaintiff allege that each LSI defendant signed at least one false and misleading SEC filing, knowing that each filing omitted the supplier statement and the financing statement.

## III. STANDARD OF REVIEW

In analyzing a motion to dismiss pursuant to Rule 12(b)(6), the court must accept as true all material allegations of the complaint, and it must construe the complaint in favor of the plaintiffs. *See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.*, 140 F.3d 478, 483 (3d Cir.1998). "A complaint should be dismissed only if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint." *Id.* Claims may be dismissed pursuant to a Rule 12(b)(6) motion only if the plaintiffs cannot demonstrate any set of facts that would entitle them to relief. *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80, (1957). The moving party has the burden of persuasion. *See Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir.1991). With these rules in mind, the court turns to an examination of the sufficiency of plaintiffs' complaint.

## IV. DISCUSSION

### A. Plaintiffs' Securities Fraud Claims Under Section 10(b)

The relevant authorities for purposes of evaluating defendants' motions are § 10(b) of the 1934 Act and Rule 10b–5. Section 10(b) prohibits any person

to use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b)(1994). Rule 10b–5, enacted pursuant to § 10, makes it unlawful in connection with the purchase or sale of any security

to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

17 C.F.R. § 240.10b–5(b).

■ "To state a securities fraud claim under section 10(b) and rule 10b–5, a private plaintiff must plead the following elements: '(1) that the defendant made a misrepresentation or omission of (2) a material (3) fact; (4) that the defendant acted with knowledge or recklessness; and (5) that the plaintiff reasonably relied on the representation or omission and (6) consequently suffered damage.'" *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525 537 (3d Cir.1999) (quoting *In re Westinghouse Sec. Litig.*, 90 F.3d 696, 710 (3d Cir.1996)).

### 1. Financing Statement

Plaintiffs allege that by omitting the fact that the commitment letters expired prior to the planned consummation of the merger, the defendants' subsequent statements to the market were misleading.

### a. Defendants Made a Misrepresentation or Omission.

■ By leaving out the notice of the expiration date of the commitment letters,

defendants made an omission. Generally, there is no affirmative duty to disclose information unless 1) there is insider trading, 2) a statute requires disclosure, or 3) a previous disclosure becomes inaccurate, incomplete, or misleading. *See Oran v. Stafford*, 226 F.3d 275, 278–86 (3d Cir.2000). Here, the duty to disclose arises because the omission makes all announcements regarding the merger misleading as LSI shareholders may have believed that the financing was secure and the merger was more likely to occur. Under the PSLRA, a plaintiff "shall specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading." 15 U.S.C. § 78u–4(b)(1)(B). Plaintiffs satisfied that requirement by pointing to five separate communications relating to the merger agreement that omitted the expiration date of the commitment letters and explaining why those communications were misleading. (D.I.30, ¶ 32–34, 37–43)

■ Although the omission in the February 4, 1998 press release made all subsequent announcements regarding the merger misleading, the court finds that only the LSI defendants had a duty to disclose the omitted information. The DRHC defendants, as an acquiring company, owed no duty to the LSI shareholders or the plaintiffs in this case. The duty to disclose under § 10(b) does not arise merely from the possession of non-market information. *See Chiarella v. United States*, 445 U.S. 222, 235, 100 S.Ct. 1108, 63 L.Ed.2d 348 (1980). Rather, liability for securities nondisclosure "is premised upon a duty to disclose arising from a relationship of trust and confidence between parties to a transaction." *Id.* at 230, 100 S.Ct. 1108; *accord Dirks v. SEC*, 463 U.S. 646, 657–658, 103 S.Ct. 3255, 77 L.Ed.2d 911 (1983); *see also Gordon v. Diagnostek*, 812 F.Supp. 57, 60 (E.D.Pa.1993) (acquiring corporation

"owed no special fiduciary responsibility to the shareholders of a separate corporation whose stock it was planning to acquire as part of an arms-length transaction.") (citing *Staffin v. Greenberg*, 672 F.2d 1196, 1203 (3d Cir.1982), *rev'd on other grounds*, 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988)); *Lerner v. FNB Rochester Corp.*, 841 F.Supp. 97, 103 (W.D.N.Y.1993) (finding no § 10(b) liability for prospective purchaser of target in failed merger because the prospective purchaser owed no duty to the target's shareholders).

Plaintiffs argue that the DRHC defendants did have a duty to disclose material information to the market. Plaintiffs contend that when the DRHC defendants issued the February 4, 1998 joint press release, they were required to include every material fact necessary in order to make the press release not misleading. Plaintiffs point to *In re MCI Worldcom, Inc. Sec. Litig.*, 93 F.Supp.2d 276 (E.D.N.Y. 2000).[8] *MCI Worldcom*, however, is distinguishable because it involved an affirmative false representation designed to lower the price of the target company. The court agrees that such a misrepresentation would be actionable under § 10(b). The DRHC defendants are accused of co-sponsoring a truthful press release announcing the price for which DRHC would acquire LSI but omitting certain financing conditions. Under these facts, the court finds that the DRHC defendants owed no

duty to the LSI shareholders; therefore, their motion to dismiss is granted.

The LSI defendants and Carey did owe a duty to the LSI shareholders. Thus, the court will examine the other § 10(b) elements in light of the remaining motions to dismiss.

### b. The Omission Was a Material Fact

 To sufficiently allege materiality of an omission, plaintiffs must show a "substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information available." *TSC Indus. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976); *Basic v. Levinson*, 485 U.S. 224, 232, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988). Whether a statement or omission is material must be determined with regard to the "complete context" in which it was made. *In re Donald Trump Sec. Litig.*, 7 F.3d 357, 369 (3d Cir.1993). Contemporaneous disclaimers and cautionary language may render immaterial statements or omissions that might otherwise be deemed material when considered in isolation. *See id.* at 371 ("[C]autionary language, if sufficient, renders the alleged omissions or misrepresentations immaterial as a matter of law.").

The LSI defendants claim the financing statements were immaterial because they

---

**8.** In that case, MCI Worldcom ("MCI"), through a spokesperson, publicly denied certain rumors of a merger between MCI and SkyTel Communications, Inc. ("SkyTel"), despite the fact that extensive merger negotiations between the two companies had been taking place. The denial caused the price of SkyTel stock to fall. Despite the denial, a merger between MCI and SkyTel was subsequently announced; and investors who had sold their SkyTel shares following the denial of the merger sued under § 10(b). *Id.* at 278–

79. MCI sought to dismiss arguing that, as an acquiring company, it owed no duty to SkyTel shareholders. The court rejected that argument stating that "[b]ecause most publically available information is reflected in market price, an investor's reliance on any public material misrepresentation, therefore, may be presumed for the purposes of a Rule 10b–5 action." *Id.* at 281, citing *Basic v. Levinson*, 485 U.S. 224, 247, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988).

were accompanied by contemporaneous statements that, in context, nullified any potentially misleading effects. In particular, defendants note that the proxy statement did not represent or guarantee that DLJ would finance the merger. Rather, it noted that DRHC "contemplates that the merger and certain related transactions will be financed by" DLJ. (D.I. 33 at A—124) Furthermore, the proxy statement specifically noted that the DLJ financing was "subject to the conditions set forth in [the] commitment letter[s]" provided to DRHC. (*Id.*) Finally, the proxy statement notified the LSI shareholders that the merger agreement "does not contain a financing condition and, therefore, the obligation of [DRHC] to consummate the Merger is not subject to obtaining financing from the sources identified above or otherwise." (*Id.*)

The LSI defendants' immateriality arguments fail for two reasons. First, defendants seek shelter in the fact that the proxy statement contained cautionary language and alerted shareholders that the merger agreement was subject to the conditions of the commitment letters. However, LSI did not disseminate the proxy statement until April 2, 1998. The complaint alleges that statements going back to the February 4, 1998 press release were misleading because of the omission of the expiration of the commitment letters. Thus, any curative effect of the April 2, 1998 proxy statement has no bearing on whether a reasonable investor would have considered the additional information important to the three previous statements.[9]

Second, the court cannot say as a matter of law that alerting shareholders that the merger is subject to conditions in the commitment letters without also disclosing the terms of the commitment letters is immaterial. Furthermore, even if the LSI shareholders were told that DRHC was bound to go through with the merger regardless of whether the financing remained intact, the court cannot say, as a matter of law, that a reasonable investor would not consider any uncertainty in the acquirer's financing to be important to the "total mix of information." Materiality is a highly fact-intensive issue which makes it difficult to resolve at the pleadings stage. *See Basic v. Levinson,* 485 U.S. at 236, 108 S.Ct. 978; *In re Apple Computer Sec. Litig.,* 886 F.2d 1109, 1113 (9th Cir.1989). Plaintiffs' complaint, thus, sufficiently alleges materiality.

### c. The LSI Defendants Acted with Scienter

The PSLRA requires that the plaintiff "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2). A plaintiff can do that by either "alleging facts 'establishing a motive and opportunity to commit fraud, or by setting forth facts that constitute circumstantial evidence of either reckless or conscious behavior.'" *Advanta,* 180 F.3d at 534–35, citing *Weiner v. Quaker Oats Co.,* 129 F.3d 310, 318 n. 8 (3d Cir.1997). At oral argument, plaintiffs indicated the recklessness standard, rather than motive and opportunity, was their "primary argument." (D.I. 65 at 41) "A reckless statement is one 'involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must

---

**9.** The February 4, 1998 press release, the February 6, 1998 Form 8–K, and the February 10, 1998 letter to LSI shareholders omitted the information about the expiration of the commitment letters.

have been aware of it.'" *Advanta*, 180 F.3d at 535, citing *McLean v. Alexander*, 599 F.2d 1190, 1197 (3d Cir.1979). Scienter under the recklessness standard is also satisfied by "stating with particularity facts giving rise to a strong inference of conscious wrongdoing, such as intentional fraud or other deliberate illegal behavior." *Advanta*, 180 F.3d at 535.

■ Plaintiffs filed this lawsuit against LSI and three of its former directors and against DRHC and its former president. The parties disagree whether a plaintiff can impute wrongdoing by a corporation upon individual defendants based on their status as an officer or director of a corporation. Such liability is referred to as the "group publishing" or "group pleading" doctrine.[10] Whether the group pleading doctrine survived the PSLRA has been addressed by several district courts but no courts of appeals.[11] If the doctrine did not survive the PSLRA, then plaintiffs will be required to allege scienter as to each defendant. Although the parties have great differences of opinion regarding the group pleading doctrine, the court need not decide its current vitality because the court already found that the DRHC defendants owed no duty to the plaintiffs and because the complaint independently alleges scienter against each LSI defendant.

The complaint generally alleges that Toler, Liston, and Carey, as former LSI directors, participated in the drafting, preparation, and/or approval of the public representations complained of in this complaint. Specifically, Toler, LSI's former CEO and director, (1) filed and signed LSI's Form 8–K which incorporated the merger agreement, and (2) co-signed and sent a letter to LSI shareholders advising them of the merger agreement. Liston, LSI's former CFO and director, signed and filed LSI's Form 10–Q. The Form 10–Q incorporated the merger agreement. Carey, LSI's former Chairman of the Board and former director, co-signed and sent a letter to the LSI shareholders advising them of the merger agreement. These specific allegations of conduct give sufficient rise to a strong inference that

**10.** Under this doctrine, the court may presume that corporate publications, such as annual reports, prospectuses, SEC filings, press releases, and other "group-published" documents are the result of collective action. Thus, at the pleadings stage a plaintiff may allege that misstatements in a group-published document are attributable to the entire group. *See In re Aetna Inc. Secs. Litig.*, 34 F.Supp.2d 935, 949 (E.D.Pa.1999), citing *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1440 (9th Cir.1987).

**11.** *See, e.g., In re Splash Techs. Holdings, Inc. Sec. Litig.*, 2000 WL 1727377 at *24–25 n. 18, 2000 U.S. Dist. LEXIS 15369 at *80–81 n. 18 (N.D.Cal. Sept. 29, 2000) (assuming that the group pleading doctrine survived the PSLRA); *Stanley v. Safeskin Corp.*, 2000 WL 33115908 at *4, 2000 U.S. Dist. LEXIS 14100 at *13–14 (S.D.Cal. Sept. 15, 2000) (rejecting argument that group pleading doctrine did not survive the PSLRA); *Zishka v. American Pad & Paper Co.*, 2000 WL 1310529 at *1–2, 2000 U.S. Dist. LEXIS 13300 at *6–7 (N.D. Tex. Sept 13, 2000) (rejecting the group pleading doctrine in light of the PSLRA and requiring plaintiffs to plead with particularity allegations against each defendant); *In re Solv–Ex Corp. Sec. Litig.*, 2000 U.S. Dist. LEXIS 13113 at *15 (S.D.N.Y. Sept. 6, 2000) ("The PSLRA has not abolished the use of group pleading in Section 10(b) cases."); *In re Ashworth Secs. Litig.*, 2000 WL 33176041 at *11–12, 2000 U.S. Dist. LEXIS 15237 at *34–35 (S.D.Cal. July 18, 2000) (holding that the group pleading doctrine did not survive the PSLRA because it cannot be reconciled with the PSLRA's requirement that plaintiff state facts with particularity as to each alleged act or omission by the defendant); *Marra v. Tel–Save Holdings, Inc.*, 1999 WL 317103 at 3–6, 1999 U.S. Dist. LEXIS 7303 at *10–16 (E.D.Pa. May 18, 1999) (dismissing Section 10(b) claims against individual defendants and noting that "the group pleading presumption does not survive the PSLRA's enactment.").

each of these defendants acted with the required state of mind.

### d. The Plaintiffs Relied on the Statements and Consequently Suffered Damages.

The Supreme Court has noted that in cases involving omissions of fact, reliance can be presumed. *Affiliated Ute Citizens of Utah v. United States,* 406 U.S. 128, 153, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972). "All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this decision." *Id.* at 153–54, 92 S.Ct. 1456. The LSI defendants do not dispute this element. Nor do they dispute the alleged damages element. During the class period, plaintiffs purchased LSI shares that, according to plaintiffs, were at a higher price than the market would have placed on the stock had the truth been disclosed.

With respect to the financing statement, the court finds that plaintiffs have sufficiently stated a § 10(b) claim against the LSI defendant for which relief can be granted under Fed.R.Civ.P. 12(b) and have alleged facts giving rise to a strong inference of scienter, as required under the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u–4(b)(2).

### 2. Supplier Statement

The plaintiffs allege that by omitting the fact that Rolex stopped shipping watches to LSI in late December 1997, the LSI defendants misled the market in its January 7, 1998 press release regarding its second quarter sales.

### a. The LSI Defendants Made a Misrepresentation or Omission.

■ By leaving out the fact that Rolex stopped shipping watches to LSI, the LSI defendants made an omission. As dis-cussed above, the LSI defendants have no duty to disclose information unless 1) there is insider trading, 2) a statute requires disclosure, or 3) a previous disclosure becomes inaccurate, incomplete, or misleading. *See Oran,* 226 F.3d at 278–86. Because the plaintiffs make no allegations of insider trading and no statute requires disclosure, the issue is whether the omission makes the January 7, 1998 press release misleading.

Plaintiffs argue that by making a statement about its watch business and its major suppliers, it had to mention the loss of the Rolex shipments in order to make the rest of the statement not misleading. Defendants argue that there is nothing misleading about the statement. The press release only mentions the watch business by saying "[c]omputerized reordering for most of our major watch lines is also providing a smoother and more targeted flow of merchandise into our stores." (D.I. 33, Tab 4 at A–54) The press release refers to "most of our major watch lines" and not to Rolex in particular.

The court agrees with the LSI defendants. A company need not explain the status of its relationship with each of its suppliers each time it mentions a particular line of business. Here, LSI did not have to mention its strained relationship with Rolex when it described its new reordering system. Because the January 7, 1998 press release was not misleading, plaintiffs have failed to allege a § 10(b) claim regarding the supplier statement. Thus, the LSI defendant's motion to dismiss is granted to the extent that it involves the supplier statement.

### B. Plaintiffs' "Control Person" Claims Under Section 20(a)

■ Section 20(a) of the Exchange Act imposes joint and several liability on persons who directly or indirectly control a

violator of the securities laws. Section 20(a) provides:

> Every person who, directly or indirectly, controls any person liable under any provision of this title or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C. § 78t(a). To state a § 20(a) claim, plaintiffs must plead both a primary and secondary violation. *See Shapiro v. UJB Fin. Corp.,* 964 F.2d 272, 279 (3d Cir.1992). To state a claim that the individual defendants were "controlling persons," plaintiffs must establish that: 1) the individual defendants had the power to control or influence the primary violators; and 2) the individual defendants were culpable participants in the illegal activity. *In re Phillips Petroleum Sec. Litig.,* 738 F.Supp. 825, 841 (D.Del.1990). To establish control person liability, plaintiffs must show that the defendants had actual power or influence over the allegedly controlled person. Actual control means the practical ability to direct the actions of the controlled person. *Id.*

■ Because the court found no primary liability against the DRHC defendants, no control person liability can follow. With respect to the LSI defendants and Carey, however, the court finds that plaintiffs have met their pleading requirements. Toler, Liston, and Carey, as former officers and directors of LSI, had the power and control to influence the publicity surrounding the merger. Although the court is mindful that "the status or position of an alleged controlling person, by itself, is insufficient to presume or warrant a finding of power to control or influence" *id.,* the other allegations are sufficient for such a finding. The plaintiffs allege that Toler, Liston, and Carey each signed an SEC filing knowing that the filing contained an omission that would likely mislead the market. Such an allegation demonstrates culpable conduct on the part of each of the defendants.

The LSI defendants' and Carey's motions to dismiss the control person liability counts are denied.

### C. Date of Class Period

■ The LSI defendants argue the class period should be cut off as of the date of the April 2, 1998 proxy statement. The proxy statement indicated to investors that the DLJ financing commitments were conditional and that DRHC was obligated to close the merger regardless of the availability of that funding from DLJ. The LSI defendants argue that no reasonable investor could have continued to believe that DLJ's financing commitment letters were unconditional or that DRHC's obligation to close the merger turned in any way on DLJ as the specific funding source of the transaction.

The LSI defendants miss the point. Plaintiffs' allegations center around the fact that the market did not know that the commitment letters **expired** prior to the planned consummation of the merger. Merely stating that such letters were subject to "conditions" without stating that specific condition cannot cure the prior misleading statement. Furthermore, the court finds that a reasonable investor would consider to be important, in the total mix of information, the fact that an acquirer's financing expires prior to the merger date. Even if DRHC were obligated to consummate the merger without the DLJ financing, a reasonable investor

would be concerned about the uncertainties of alternative financing sources.

The court denies the LSI defendants' motion to end the class period on April 2, 1998. However, since the court dismisses the complaint to the extent it involves the supplier statements, the class period should begin on February 4, 1998—the day DRHC and LSI announced the merger—and end on May 4, 1998—the day that LSI disclosed the expiration of the financing commitment.

## V. CONCLUSION

For the foregoing reasons, the court grants the DRHC defendants' motion to dismiss.[12] (D.I.55) The court grants in part and denies in part the LSI defendants' and Carey's motions to dismiss. (D.I.31, 34) The motions are granted to the extent they involve the supplier statements. The motions are denied to the extent that they involve the financing statements. For the claims remaining in this case, the class period shall be between February 4, 1998, and May 4, 1998. An appropriate order shall issue.

---

**12.** The dismissal moots the issue of whether the court has personal jurisdiction over defendant Crane.